CHARLES VAN VORST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Vorst v. Commissioner
Docket No. 19201-90
United States Tax Court
T.C. Memo 1993-353; 1993 Tax Ct. Memo LEXIS 352; 66 T.C.M. (CCH) 346; August 11, 1993, Filed *352 Decision will be entered under Rule 155. For petitioner: Gerald N. Daffner. For respondent: Pietra Pastore. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 1,521
$ 6,326
[1]
$ 3,163
1983
4,124
4,838
[2]
2,419
1984
19,461
14,375
[3]
7,188
1985
12,621
12,438
[4]
6,219
Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. Because the statutory notices of deficiency determined fraud additions, the notices proposed that the late filing additions under section 6651(a) previously assessed [1] be abated in the following amounts: 1982
($ 5,287)
1983
(  2,442)
1984
(  3,530)
1985
(  3,860)
In the *353 answer to the petition, respondent, as an alternative to the fraud additions under section 6653(b)(1) and (2), asserted the late filing additions under section 6651(a) and the negligence additions under section 6653(a)(1) and (2). The issues for decision are: 1. Whether petitioner is entitled to the deductions claimed on his Schedule C for each of the years 1982 through 1985; 2. Whether petitioner is liable for the fraud additions under section 6653(b)(1) and (2) for each of the years 1982 through 1985; 3. Alternatively, if petitioner is not liable for the fraud additions, whether he is liable for the late filing additions under section 6651(a) and the negligence additions under section 6653(a)(1) and (2) for the years 1982 through 1985; and 4. Whether petitioner is liable for the addition under *354 section 6661 for substantial understatement of income tax each year. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of filing his petition in this Court, petitioner resided in Mechanicville, New York. During the years before the Court, petitioner was a self-employed masonry subcontractor specializing in concrete work for concrete decks around swimming pools. Petitioner is a person of little formal education, having completed only the sixth grade in school. At age 15, he began working at a hotel in Albany, New York, where he worked as a busboy and dishwasher for a couple of years. At age 17, he entered the United States Navy, where he served from 1956 through 1960. After he was discharged from the Navy, he began working for masonry contractors and worked for them for approximately 9 years. In 1969, petitioner went into business as a masonry subcontractor. By 1982 petitioner had been engaged in masonry subcontracting work as a sole proprietor for some 13 years. The vast majority of petitioner's masonry work was performed under contracts *355 with Concord Pools, Ltd. (Concord Pools), which each year timely issued to petitioner a Form 1099 reflecting the payments it made to him. During the taxable years before the Court, petitioner received income from Concord Pools, reflected on timely Forms 1099, in the following amounts: 1982
$ 108,865.92
1983
134,921.50
1984
231,404.32
1985
250,270.38
No estimated taxes were withheld from the compensation reported on the Forms 1099 that petitioner received from Concord Pools. While petitioner has had no training in financial matters and regards business records as "something * * * [he's] not very good at", he has been a successful businessman for a number of years. Although petitioner suggested that business records "overwhelm * * * [him] a bit", he hired bookkeepers for his business at various times. From May of 1981 through November of 1981, he had a bookkeeper to handle the business bookkeeping and to prepare and file the payroll returns (Forms 940 and 941). In November of 1981, the bookkeeper departed voluntarily because the business was seasonal, April through October, and her services were no longer needed. In the spring of 1982, petitioner hired a new bookkeeper *356 named Lynn, who continued to work for petitioner through the end of 1985. Lynn's job was to prepare the payroll and payroll tax returns and to keep the books for the business. Her duties, however, did not include preparation of petitioner's individual State and Federal tax returns. During the years before the Court, petitioner used cash extensively in his business transactions. He frequently wrote checks payable to "cash", and used the proceeds of those checks to pay his laborers and materialmen in cash. In addition, petitioner frequently cashed checks he received from Concord Pools and used the cash to pay his laborers and materialmen. Thus, many of the checks he received as nonemployee compensation from Concord Pools were not deposited in his bank account. Petitioner filed Employer's Annual Federal Unemployment Tax Returns (Forms 940) for the taxable years 1983, 1984, and 1985. He also filed Employer's Federal Quarterly Tax Returns (Forms 941) for the tax quarters ending September 30, 1983, through December 31, 1985. Petitioner did not file any individual Federal income tax returns for the taxable years 1982 through 1985 until July 7, 1987. He had filed individual Federal *357 income tax returns prior to those years and was aware of his duty to file his Federal income tax returns every year by April 15. Petitioner also did not file any New York State income tax returns for the taxable years 1982 through 1985 until July 9, 1987. Petitioner separated from his first wife in the summer of 1981 and was divorced sometime after December 31, 1982. [2] He married his present wife, Linda, in February of 1986. *358 In early 1986, [3] *359 petitioner and Linda sought a mortgage from Citibank of Syracuse, New York, in order to purchase their present home, the house at 7 Washington Avenue, Mechanicville, New York. The mortgage department of Citibank requires all self-employed individuals, such as petitioner, to submit along with their mortgage applications copies of their Federal income tax returns. Petitioner submitted to Citibank purported copies of Forms 1040, U.S. Individual Income Tax Returns, for the years 1983, 1984, and 1985. Petitioner signed those forms. [4] The names, Social Security numbers, and addresses of the return preparers indicated on the returns are phony. Petitioner claims those tax returns were prepared for him by his bookkeeper, Lynn, and that she either signed the name of the return preparer or had someone else sign the name of the return preparer. Lynn did not appear or testify at the trial. The Court did not find petitioner to be a credible witness in regard to the preparation and signing of these phony tax returns. The record does not clearly establish exactly when or by whom the Forms 1040 submitted to Citibank were prepared. It is apparent that the phony return preparer's signatures and possibly petitioner's own signatures were placed on those Forms 1040 shortly before they were submitted to Citibank. Petitioner admitted that all three Forms 1040 were signed by him at the same time. While petitioner testified he signed those Forms 1040 without looking at them, the Court did not believe him. The Court further concludes that petitioner himself either prepared or caused the preparation of those phony *360 tax returns. [5]
The record is devoid of any evidence as to why petitioner failed to file timely Federal and State tax returns and pay the tax due and owing with those returns. Petitioner, although a self-employed person for many years, also failed to file any estimated tax returns and failed to pay any estimated tax during any of the years before the Court. In late May of 1986, petitioner and his wife, Linda, desiring to file a joint return for the taxable year 1986, consulted a certified public accountant (C.P.A.). The C.P.A. was first interested in having petitioner file estimated tax returns and make estimated tax payments for 1986 (the next such estimated tax return and payment being due June 15, 1986), in anticipation of the filing of a joint return (Form 1040) for the year 1986. The C.P.A. prepared and filed the quarterly estimated returns for June and September of 1986 and prepared and timely filed the joint *361 income tax return in April of 1987. In the course of his interviews with petitioner and Linda, the C.P.A. learned that petitioner had not filed individual tax returns for 1982 through 1985. The C.P.A. decided to undertake to reconstruct petitioner's income for those years. [6] The C.P.A. instructed petitioner to assemble his bank statements, canceled checks, and other records for those years. At some point during this process, the C.P.A. instructed Linda how to prepare spreadsheets, which she did in order to save time and accounting fees. Meanwhile, petitioner's filing of Employer's Annual Federal Unemployment Tax Returns (Forms 940) and Employer's Federal Quarterly Tax Returns (Forms 941) for 1983 through 1985 triggered a search by the Internal *362 Revenue Service (IRS) for petitioner's individual tax returns. The search disclosed that petitioner had not filed Forms 1040 for the taxable years 1982 through 1985. On January 7, 1987, a special agent of the IRS contacted petitioner, informed him of a criminal investigation of his failure to file tax returns, and advised him of his legal rights. The C.P.A. first learned about the criminal investigation of petitioner in early 1987, probably about the same time that petitioner learned of it. On July 7, 1987, petitioner filed Federal individual income tax returns prepared by the C.P.A. for 1982, 1983, 1984, and 1985. On July 9, 1987, petitioner filed State income tax returns prepared by the C.P.A. for 1982, 1983, 1984, and 1985. On the Federal income tax returns, petitioner reported the following gross receipts and Schedule C expenses: 1982 1983 1984 1985 Gross Receipts
$ 110,066
$ 136,121
$ 231,416
$ 251,470
Expenses
Car and truck expense
3,866
4,686
7,817
8,582
Rent on business property
960
960
931
779
Utilities and telephone
311
416
610
708
Cost of goods sold - labor
27,516
13,900
48,027
51,300
Cost of goods sold - materials
44,013
59,862
92,567
107,549
*363 Petitioner reported Federal taxes owed in the following amounts: 1982
$ 11,131
1983
5,551
1984
9,289
1985
12,255
On April 7, 1989, petitioner pleaded guilty to one charge of willful failure to file a tax return for 1985 under section 7203. On June 19, 1989, petitioner was adjudged guilty of that offense. He was placed on probation for a term of 1 year, ordered to pay all taxes, ordered to perform 200 hours of community service, and fined the sum of $ 3,000. Statutory notices of deficiency were mailed to petitioner on June 7, 1990. Respondent disallowed deductions for Schedule C expenses in the following amounts for each of the years at issue: Claimed
Allowed
Disallowed
1982 Expenses
Car and truck expense
$   3,866
$   2,229
$  1,637
Rent on business property
960
-0-
960
Utilities and telephone
311
-0-
311
Cost of goods sold - labor
27,516
27,516
-0-
Cost of goods sold - materials
44,013
44,013
-0-
1983 Expenses
Car and truck expense
4,686
1,886
2,800
Rent on business property
960
-0-
960
Utilities and telephone
416
-0-
416
Cost of goods sold - labor
13,900
8,093
5,807
Cost of goods sold - materials
[1] 44,013
44,013
-0-
1984 Expenses
Car and truck expense
7,817
2,908
4,909
Rent on business property
931
-0-
931
Utilities and telephone
610
-0-
610
Cost of goods sold - labor
48,027
18,609
29,418
Cost of goods sold - materials
92,567
84,747
7,820
1985 Expenses
Car and truck expense
8,582
3,673
4,909
Rent on business property
779
-0-
779
Utilities and telephone
708
-0-
708
Cost of goods sold - labor
51,300
28,701
22,599
Cost of goods sold - materials
107,549
107,549
-0-
*364 The explanations attached to the notices of deficiency state that respondent reduced the Schedule C deductions because petitioner did not establish that more than the allowed amounts were for ordinary and necessary business expenses, or were expended for the purpose stated. Respondent offered no further explanation or evidence regarding the disallowance of these deductions. The IRS officer who examined petitioner's returns did not appear or testify at the trial in this case. In preparing petitioner's tax returns for 1982 through 1985, the C.P.A. had petitioner's canceled checks in his office, but the C.P.A. essentially relied instead on the spreadsheets compiled by petitioner's wife, Linda. Linda did not appear or testify at the trial in this case. The C.P.A. also relied on petitioner's estimates as to labor and material expenditures paid in cash and a percentage of rent and utilities expenses claimed as home office expense. Petitioner did not testify about any of these matters. The C.P.A., relying on information given to him by petitioner, testified that petitioner used the dining room of his apartment regularly and exclusively as his only business office. Petitioner did *365 not testify about the home office at all. Petitioner deducted expenses for rent, utilities, and telephone based on his contention that he used the dining room in his apartment as a business office on a regular and exclusive basis. Petitioner and the C.P.A. determined that 20 percent of the floor space in the apartment was used regularly and exclusively for business purposes. The deductions for rent, utilities, and telephone were computed by taking 20 percent of the total expenses for those items. The C.P.A. used the 20-percent computation for these items for all years at issue. On his 1983 return, petitioner deducted $ 13,900 for cost of goods sold - labor, which the C.P.A. testified was represented by checks, many of which were made payable to cash. Respondent disallowed $ 5,807 of the claimed amount. The C.P.A. computed the cost of goods sold - labor for 1984 to be $ 48,027, which included $ 22,257 from canceled checks (mostly made out to cash) and $ 25,770 attributable to cash payments petitioner claimed to have made to his primary subcontractor, Eddie Rilley. The C.P.A. testified that petitioner estimated the amount of cash paid to Eddie Rilley based upon reasonable profit *366 percentages for the number of decks and the number of square feet of concrete that was poured. Respondent disallowed $ 29,418 of the claimed amount. Although the total amount of actual checks written for materials in 1984 was $ 84,747, petitioner reported costs of goods sold - materials in the amount of $ 92,567 on his 1984 return. The C.P.A. computed the amount reported using 40 percent of the gross receipts of $ 231,416. The C.P.A. used the 40 percent rather than the amount of actual checks because petitioner paid for some materials in cash and, in prior years, 40 percent of gross receipts approximated the actual checks written for materials. Respondent disallowed $ 7,820, the difference between the amount claimed and the amount of actual checks. Petitioner reported costs of goods sold - labor in the amount of $ 51,300 for 1985. This figure was based on checks written in 1985, the majority of which were made payable to cash. Respondent disallowed $ 22,599. The cost of goods sold - materials claimed on the 1985 return was $ 107,549, which was based on the total of actual checks written that year and was allowed by respondent. There is no dispute as to petitioner's gross *367 receipts each year. Petitioner at commencement of trial conceded the disallowed portions of the automobile expense item claimed on his Schedules C for the years before the Court. Respondent conceded on brief that the additions to tax under section 6661 do not apply for taxable years 1982 and 1983, the amount of the deficiencies not meeting the statutory definition for a substantial understatement. [7]
ULTIMATE FINDINGS OF FACT 1. Petitioner has not established any error in respondent's determinations of deficiencies. 2. Petitioner's failure to timely file Federal income tax returns was due to fraud with intent to evade Federal income tax each year 1982 through 1985. 3. There were substantial *368 understatements of petitioner's income tax for the taxable years 1984 and 1985. OPINION I Deficiencies
Petitioner has the burden of proving by a preponderance of the evidence that the deficiencies for each of the years at issue as determined by respondent are incorrect and that he is entitled to deductions greater than those allowed by respondent. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner concedes the disallowed portions of the automobile expense items. The C.P.A. prepared petitioner's returns for each of the years at issue based on spreadsheets prepared by petitioner's wife, Linda. Linda did not appear or testify at trial. Petitioner did not offer into evidence any bank statements, canceled checks, receipts, or other books or records to support any of his claimed deductions. The C.P.A. relied on petitioner's estimates as to labor and material payments made in cash. Petitioner did not testify about his estimates. The C.P.A. claimed that petitioner made cash payments to his primary subcontractor, Eddie Rilley. Petitioner did not testify about these cash payments. Eddie Rilley did not appear or testify at trial. *369 The C.P.A. computed deductions for rent, utilities, and telephone based on petitioner's claim that he used the dining room in his apartment as a business office on a regular and exclusive basis. Petitioner did not testify in regard to the business use of any portion of his residence. Petitioner has failed to meet his burden of proving that he is entitled to deductions or costs of goods sold in excess of those allowed by respondent. We sustain respondent's determinations of deficiencies for all years. II Additions for Fraud
Respondent determined in the notices of deficiency that petitioner is liable for the additions to tax for fraud under section 6653(b)(1) and (2) for each of the years at issue. Respondent bears the burden of proof and must establish each element of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Wright v. Commissioner, 84 T.C. 636, 639 (1985). Respondent must prove fraud in each of the years involved. Drieborg v. Commissioner, 225 F.2d 216, 220 (6th Cir. 1955), *370 affg. in part and revg. in part a Memorandum Opinion of this Court dated Feb. 24, 1954. Fraud is actual, intentional wrongdoing, and the intent is the specific purpose to evade a tax believed to be owing. Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Respondent must show that petitioner intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of the tax. Stoltzfus v. United States, supra at 1004; Webb v. Commissioner, supra at 377. Fraud is never to be presumed. Toussaint v. Commissioner, 743 F.2d at 312; Webb v. Commissioner, 394 F.2d at 377. *371 The existence of fraud is a question of fact to be determined on the basis of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud, however, can seldom be proved by direct proof of the taxpayer's intention. Fraud can be established by circumstantial evidence and by reasonable inferences drawn from the taxpayer's entire course of conduct. Spies v. United States, 317 U.S. 492, 499 (1943); Toussaint v. Commissioner, 743 F.2d at 312; Gajewski v. Commissioner, supra at 200. Courts frequently list various factors or "badges of fraud" from which fraudulent intent may be inferred. Although such lists are nonexclusive, some of the factors this Court has considered as indicative of fraud are (1) understatement of income, (2) inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of assets, (5) failure to cooperate with the tax authorities, (6) engaging in illegal activities, and (7) dealing in cash. Meier v. Commissioner, 91 T.C. 273, 297-298 (1988) *372 (citing Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601). The taxpayer's evasiveness on the stand, inconsistencies in his testimony, and the lack of credibility of such testimony are heavily weighted factors in considering the fraud issue. Toussaint v. Commissioner, 743 F.2d at 312. Section 6653(b)(1) imposes an addition to tax in the amount of 50 percent of the entire underpayment of tax if any part of the underpayment is due to fraud. In order to establish fraud for purposes of the addition under section 6653(b)(1) for the years at issue, respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. By contrast, section 6653(b)(2) applies only with respect to the portion of the underpayment *373 attributable to fraud. Therefore, for purposes of the addition under section 6653(b)(2), respondent must prove by clear and convincing evidence the portion of the underpayment attributable to fraud for each of the years at issue. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Franklin v. Commissioner, T.C. Memo. 1993-184; see also Estate of Stimson v. Commissioner, T.C. Memo. 1992-242; Bingo v. Commissioner, T.C. Memo. 1991-248, affd. without published opinion 987 F.2d 774 (11th Cir. 1993). 1. Additions Under Section 6653(b)(1). Section 6653(b)(1) provides for an addition to tax in an amount equal to 50 percent of the underpayment, as defined in section 6653(c), of tax required to be shown on a return, if any part of the underpayment is due to fraud. Section 6653(c) defines an underpayment generally as a deficiency as defined by section 6211, [8] except that: for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into *374 account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing * * * Thus, if a return is timely filed, the underpayment generally is the difference between the correct tax and the tax shown on the timely filed return. Levinson v. United States, 496 F.2d 651, 655 (3d Cir. 1974) (citing Papa v. Commissioner, 464 F.2d 150 (2d Cir. 1972), revg. on another issue T.C. Memo. 1970-90). If a return is not timely filed, however, the underpayment is the total tax liability without reduction for the amount shown on a late return. Cirillo v. Commissioner, 314 F.2d 478, 484 (3d Cir. 1963), affg. T.C. Memo. 1961-192; see also Tomlinson v. Lefkowitz, 334 F.2d 262, 267 (5th Cir. 1964). *375 a. Existence of Underpayment.
Respondent must prove by clear and convincing evidence the two elements of fraud: (1) the existence of an underpayment of tax each year, and (2) that some part of the underpayment is due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Mosteller v. Commissioner, T.C. Memo. 1986-505, affd. without published opinion 841 F.2d 1123 (4th Cir. 1988). Respondent cannot meet her burden of establishing the existence of an underpayment on the basis of petitioner's failure to meet his burden of proving error in the determination of deficiencies. Drieborg v. Commissioner, 225 F.2d at 218; Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971). On July 7, 1987, petitioner filed late Federal income tax returns for each of the years at issue, reporting taxes owed in the amounts of $ 11,131 for the taxable year 1982, $ 5,551 for the taxable year 1983, $ 9,289 for the taxable year 1984, and $ 12,255 for the taxable year 1985. Thus petitioner has conceded that he owed at least that amount of tax *376 each year, none of which was reported on a timely filed return. Those returns, considered in light of all of the facts and circumstances discussed below, clearly and convincingly prove the existence of an underpayment of tax in at least those amounts for the respective years at issue. Respondent has proved by clear and convincing evidence the existence of an underpayment. b. A Portion of the Underpayment Is Attributable to Fraud.
Petitioner failed to file individual income tax returns over a 4-year period and was found guilty of willfully failing to file a return under section 7203 for the year 1985. While intent to evade tax is not an element of the crime under section 7203, petitioner is collaterally estopped from denying that he willfully and knowingly failed to file a return for that year. Castillo v. Commissioner, 84 T.C. 405, 409-410 (1985); cf. Meier v. Commissioner, 91 T.C. at 282-286; Wright v. Commissioner, 84 T.C. at 643-644. Furthermore, the record as a whole establishes that petitioner willfully and knowingly failed to file timely returns for 1982, 1983, and 1984, *377 the remaining taxable years before the Court. Petitioner was aware of his obligation to file income tax returns and had filed such returns in earlier years. The only explanation in the record for petitioner's failure to file returns for this 4-year period is a feeble attempt by petitioner to somehow cast blame on his bookkeeper and petitioner's ready adoption of his counsel's suggestion in a series of leading questions that somehow book work "overwhelms" him. There is no evidence as to any failing on the part of the bookkeeper that might explain petitioner's failure to file his individual tax returns. Preparation of petitioner's individual tax returns was not part of Lynn's duties as a bookkeeper. As to his being "overwhelmed" by business records, the fact is that by 1982 petitioner had been engaged in masonry subcontracting work for some 13 years. During the years at issue, he successfully subcontracted jobs with Concord Pools that generated gross receipts totaling approximately $ 725,000. In order to successfully subcontract for jobs over the years and to complete the jobs at a profit, petitioner must have kept track of the costs of material and labor from prior jobs. He *378 could not have been overwhelmed by such business records. Furthermore, for purposes of preparing the 1984 return, he estimated the amount of cash paid to Eddie Rilley based upon reasonable profit percentages for the number of decks and the number of square feet of concrete that was poured. Obviously petitioner kept and was not overwhelmed by business records reflecting the number of jobs and the number of square feet of concrete poured during 1984. In light of these facts, we do not think that petitioner could have been so overwhelmed by business records that he could not timely file Federal income tax returns and pay the appropriate tax for the years at issue. Petitioner willfully failed to file timely returns for the years 1982 through 1985, and that is persuasive circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Stoltzfus v. United States, 398 F.2d at 1005. Although petitioner did not timely file Federal income tax returns for the taxable years before the Court, he prepared or caused to be prepared phony returns *379 for 1983, 1984, and 1985 in order to secure a bank loan. Petitioner signed all of those phony returns on the same date. He either backdated and included names of fictitious return preparers on the phony returns or he caused it to be done. Petitioner's actions were intended to mislead the bank to conclude that the phony returns were bona fide copies of returns that petitioner had filed with the IRS. The Forms 1040 submitted to Citibank show that petitioner will create phony business records, falsify documents, and mislead others when he thinks it is to his advantage to do so. Such action raises serious doubts as to his credibility and is a factor supporting a finding of fraud. McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). The phony Forms 1040 also show that, if petitioner had wished to do so, he could have had returns prepared and timely filed with the IRS. During the years at issue, petitioner had substantial, and ever increasing, amounts of income that he did not report. There was a pattern of consistent failure to report any amount of petitioner's substantial income for the 4 *380 years at issue. This is strong evidence of fraud. Korecky v. Commissioner, 781 F.2d at 1568; Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172. Furthermore, the income was not subject to any withholding, and petitioner, who had long been self-employed, failed to make any payments of estimated tax. Petitioner also dealt extensively in cash. Petitioner frequently wrote checks to cash and paid his laborers and materialmen in cash. Petitioner paid employees and vendors in cash from checks from Concord Pools which had not passed through his bank account. He told his C.P.A. that the Concord Pools checks were cashed and the cash used to pay subcontractors because petitioner thought he was doing them a favor by paying them in cash. There is no evidence to support petitioner's estimates of the amount of such cash payments to laborers, materialmen, or subcontractors. Petitioner filed Forms 940 and 941 reporting employee wages, but there is no evidence of any Forms 1099 that petitioner should have issued for his subcontractors, such as Eddie Rilley. In summary, *381 the record establishes a recurrent pattern over several years, whereby petitioner failed to file timely tax returns, failed to report substantial amounts of income, failed to make estimated tax payments, was willing to prepare and submit to Citibank phony tax returns when it suited his purposes, and dealt extensively in cash, paying for material and labor in cash and failing to deposit checks into his bank account. Moreover, the Court found petitioner's testimony to be evasive and unworthy of belief. Based on the record as a whole, the Court concludes that respondent has proved fraud by clear and convincing evidence for each of the years before the Court. On July 7, 1987, petitioner filed late Federal income tax returns for each of the years at issue. On those returns petitioner acknowledged that he owed taxes in the amounts of $ 11,131 for the taxable year 1982, $ 5,551 for the taxable year 1983, $ 9,289 for the taxable year 1984, and $ 12,255 for the taxable year 1985, and those amounts presumably have been assessed and paid either with the delinquent returns or during petitioner's probation period. However, because petitioner failed to file timely returns, the addition under *382 section 6653(b)(1) is in the amount of 50 percent of petitioner's total tax liability for each year at issue without reduction for the amount shown on the late return for such year. 2. Additions Under Section 6653(b)(2): Amount of Underpayment Attributable to Fraud.
For each of the years at issue, respondent has asserted a fraud addition under section 6653(b)(2), which imposes a separate addition to tax, equal to 50 percent of the interest payable under section 6601, on the portion of the underpayment attributable to fraud. Respondent has the burden of proving by clear and convincing evidence the portion of the underpayment that is attributable to fraud. DiLeo v. Commissioner, 96 T.C. at 873; Franklin v. Commissioner, T.C. Memo. 1993-184. This Court stated in the Franklin case: Accordingly, to adjudicate an addition to tax under section 6653(b)(2), first we must examine the evidence and satisfy ourselves as to the amount that clearly and convincingly is an underpayment. Then, we must determine whether any or all of such amount clearly and convincingly is due to fraud. Only to that extent can respondent *383 prevail in her determination of an addition to tax under section 6653(b)(2).
Franklin v. Commissioner, T.C. Memo. 1993-184. Petitioner's late filed returns conceded that he owed taxes at least in the amounts of $ 11,131 for the taxable year 1982, $ 5,551 for the taxable year 1983, $ 9,289 for the taxable year 1984, and $ 12,255 for the taxable year 1985. As was discussed in connection with section 6653(b)(1), at least these amounts of underpayments of tax have been established by clear and convincing evidence, and fraud has been established by clear and convincing evidence for each year. Late filed returns do not negate a preexisting fraudulent failure to file (i.e., a failure to file due to fraud with intent to evade taxes). Bennett v. Commissioner, 30 T.C. 114 (1958); cf. Badaracco v. Commissioner, 464 U.S. 386, 400-401 (1984). We must now determine whether respondent clearly and convincingly proved any additional underpayment of tax attributable to the disallowance of the Schedule C deductions claimed on those delinquent returns. We conclude that she has not. As a general rule, *384 once respondent establishes the existence of unreported income and allows the deductions claimed on the return, the burden shifts to petitioner to produce evidence as to any additional offsetting expenses and deductions. United States v. Bender, 218 F.2d 869, 871 (7th Cir. 1955); Perez v. Commissioner, T.C. Memo. 1974-211; accord United States v. Garguilo, 554 F.2d 59, 62 (2d Cir. 1977). This rule is based on the presumption that, where a taxpayer has not entirely omitted from his return receipts from a particular activity, the taxpayer, having no desire to overpay his tax, has reported all offsetting deductions. See e.g., United States v. Bender, supra at 871. Where the taxpayer has failed to file a return, or his return shows no receipts from a particular activity, then the assumption that he, more readily than respondent, has access to evidence of offsetting deductions makes the nonexistence of such amounts a fair presumption, absent the production of some exculpatory evidence. See Siravo v. United States, 377 F.2d 469, 473 & n.6 (1st Cir. 1967). *385 In the event petitioner produces evidence supporting such expenses and deductions, the presumption is rebutted, and respondent has the burden of proving such deductions are not allowable. Id.
Petitioner did not report any income for the taxable years at issue until July 7, 1987, some 6 months after the IRS agent informed him about the criminal investigation. On petitioner's late filed returns, he claimed, among others, deductions for car and truck expenses, rent on business property, utilities and telephone, cost of goods sold - labor, and cost of goods sold - materials. Petitioner has conceded the disallowed portion of the automobile expense item claimed on his Schedule C for each of the years before the Court. Petitioner did not offer into evidence any bank statements, canceled checks, receipts, or other books or records supporting any of the deductions disallowed by respondent. He did not testify regarding the business use of the dining room in his apartment, the method he used for estimating the alleged cash payments to Eddie Rilley, or the use of 40 percent of gross receipts to determine cost of goods sold - materials. He did not produce any testimony of persons with *386 personal knowledge of the facts. The only testimony regarding the deductions came from the C.P.A., who admitted that all his information came from petitioner and the spreadsheets compiled by Linda. However, petitioner's failures of proof as to disallowed deductions do not satisfy respondent's higher burden of proof as to the same disallowed deductions. Had petitioner never filed any returns or had he filed the returns only after the criminal trial and respondent's issuance of the notices of deficiency, we might have found that the entire underpayment as determined by respondent is attributable to fraud. [9] The returns, however, were filed before petitioner was actually charged with a tax crime and could have been used as evidence against him in a criminal trial. We think under the circumstances, petitioner, aware of the ongoing criminal investigation, would have been fairly scrupulous in the preparation of the returns. We note that the amounts reported as employee compensation on the returns fairly match the amounts reported on the Forms 990 and 991 that were timely filed during 3 of the 4 years at issue. *387 Petitioner's gross receipts increased each year during the years at issue. Petitioner had gross receipts of $ 110,066 in 1982, $ 136,121 in 1983, $ 231,416 in 1984, and $ 251,470 in 1985. He claimed cost of goods sold - labor expenses in the amount of $ 27,516 in 1982, $ 13,900 in 1983, $ 48,027 in 1984, and $ 51,300 in 1985. Respondent allowed the entire $ 27,516 claimed in 1982 but only allowed $ 8,093 in 1983, $ 18,609 in 1984, and $ 28,701 in 1985. Considering the fact that the gross receipts increased each year, it is likely that the corresponding expenses similarly increased each year. There is no clear and convincing evidence, for purposes of section 6653(b)(2), that those expenses decreased or that the amounts claimed by petitioner were erroneous. Petitioner claimed cost of goods sold - materials in the amount of $ 44,013 in 1982, $ 59,862 in 1983, $ 92,567 in 1984, and $ 107,549 in 1985. The percentage of the gross receipts represented by the cost of goods sold - materials claimed by petitioner was approximately 40 percent in 1982, 44 percent in 1983, 40 percent in 1984, and 42 percent in 1985. Respondent allowed the entire amounts claimed in 1982, 1983, and 1985, *388 but disallowed $ 7,820 of the amount claimed in 1984. There is no clear and convincing evidence, for purposes of section 6653(b)(2), that the amount claimed by petitioner in 1984 was erroneous. Petitioner deducted expenses for rent, utilities, and telephone based on his contention that he used the dining room in his apartment as a business office on a regular and exclusive basis. Petitioner and his C.P.A. determined that 20 percent of the floor space in the apartment was regularly and exclusively used for business purposes. The deductions for rent, utilities, and telephone were computed by taking 20 percent of the total expenses for those items. Respondent has offered no explanation for the disallowance of these deductions. She does not argue that petitioner did not use his dining room regularly and exclusively for business purposes. There is no evidence that he had another business office. While petitioner did not testify about these items, respondent also did not question him about the items. There is no clear and convincing evidence, for purposes of section 6653(b)(2), that petitioner was not entitled to the deductions for these amounts. Petitioner has conceded the disallowed *389 portions of the automobile expense item claimed on his Schedule C for each of the years before the Court. Such a concession does not establish that the further amount was a phony or sham deduction, and, without more, does not constitute clear and convincing evidence, for purposes of section 6653(b)(2), that this amount was claimed as a deduction with an intent to defraud. We have repeatedly held that respondent cannot rely upon petitioner's failure to prove respondent's deficiency determination erroneous to meet her heightened burden of proof in a fraud case. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The only explanation for the disallowance of petitioner's deductions appears in the notices of deficiency, which indicate that respondent reduced petitioner's Schedule C deductions because petitioner did not establish that more than the allowed amounts were for ordinary and necessary business expenses, or were expended for the purpose stated. Respondent has offered no further explanation or evidence for her disallowance of the amounts claimed by petitioner on his Schedule C each year. The IRS officer who examined petitioner's return did not *390 testify at trial. We hold that, for purposes of section 6653(b)(2), respondent has proved by clear and convincing evidence that an underpayment exists each year in an amount equal to the tax liability shown on the late returns. Respondent has failed to prove by clear and convincing evidence any additional underpayment of tax attributable to the disallowed deductions. During the years at issue, petitioner received substantial amounts of income from Concord Pools which were not subject to withholding. Although self-employed for many years prior to 1982, petitioner failed to pay any estimated income tax during the years before the Court. Petitioner failed to file timely returns or otherwise report substantial amounts of income for those years. In addition, petitioner prepared and submitted to Citibank phony returns when it suited his convenience to do so. Petitioner also dealt extensively in cash, paying for material and labor in cash, and failing to deposit checks into his bank account. This pattern of conduct over a 4-year period and petitioner's lack of credibility as a witness satisfy the Court that respondent has proved fraud by clear and convincing evidence for purposes *391 of section 6653(b)(2). We hold that the underpayment equal to the tax liability shown on the late returns is attributable to fraud and is subject to the further additions under section 6653(b)(2). III Additions for Late Filing and Negligence
Because we have found that petitioner is liable for additions to tax for fraud under section 6653(b), it is unnecessary for us to address respondent's alternative argument that petitioner is liable for additions to tax for filing late returns under section 6651(a) or for negligence under section 6653(a). IV Additions for Substantial Understatement
Petitioner reported tax in the amount of $ 9,289 on his 1984 return and in the amount of $ 12,255 on his 1985 return. Petitioner understated his tax liability by $ 19,461 in 1984 and by $ 12,621 in 1985. Because petitioner understated his income tax in an amount greater than $ 5,000 or 10 percent of the tax required to be shown on his return each year, we hold that petitioner is liable for the addition to tax under section 6661(b)(1)(A) for each of the years 1984 and 1985. To reflect the above holdings and the parties' concessions, Decision will be entered under Rule 155 *392 . Footnotes
1. 50 percent of interest due on $ 12,652.↩
2. 50 percent of interest due on $ 9,675.↩
3. 50 percent of interest due on $ 28,750.↩
4. 50 percent of interest due on $ 24,876.↩
1. The record does not indicate what prior assessments were made, when the prior assessments were made, or the amount of the prior assessments. Presumably the taxes reported on the late filed returns were assessed.↩
2. Although petitioner testified he was divorced from his first wife in June of 1982, the Court found his testimony as to this and other dates to be unreliable. We note that petitioner's delinquent return for the taxable year 1982 was filed on the basis of married, filing a separate return. The Court regards this document as more reliable than petitioner's testimony. The C.P.A. preparing that return knew or should have known that filing status is determined as of the last day of the tax year and would not have used that filing status, with its higher tax rate, had the divorce taken place in June of 1982.↩
3. Petitioner testified this application for a mortgage was made in late 1985 or early 1986. Since it was a joint application of husband and wife and since they did not marry until February of 1986, the Court concludes this application was made in early 1986 rather than late 1985. Also the Citibank representative testified that he believed the application was filed on Feb. 2, 1986.↩
4. Petitioner's signatures are dated 3/21/83, 3/15/84, and 1/3/85 for the Forms 1040 for the years 1983, 1984, and 1985, respectively. In each instance the date next to petitioner's signature is a date during the particular tax year and a date before the end of the year of the particular return. Similarly, each of the dates next to the return preparer's signature is a date during the particular tax year and a date before the end of the particular year for which the return purports to be the return of taxes.↩
5. The record shows that the bookkeeper, Lynn, left petitioner's employment at the end of 1985.↩
6. The record does not indicate exactly when the C.P.A. learned about petitioner's failure to file returns. There is no explanation in the record as to what records petitioner's bookkeeper had or had not maintained and why those records (or income) needed to be reconstructed.↩
1. The cost of goods sold - materials as reported by petitioner on his 1983 Form 1040 is actually $ 59,862. The incorrect figure for 1983, indicated on respondent's explanation to the notice of deficiency, is the cost of goods sold - materials reported by petitioner for the taxable year 1982.↩
7. The parties were ordered to submit simultaneous opening briefs and simultaneous reply briefs. Shortly before opening briefs were due, petitioner's counsel notified the Court that petitioner had instructed him not to prepare or to file an opening brief or a reply brief. Petitioner did not file any briefs in this case.↩
8. Sec. 6211(a)(1)(A), to which Sec. 6653(c) refers, provides in pertinent part: SEC. 6211(a) In General. -- For purposes of this title in the case of income, estate, and gift taxes * * * the term "deficiency" means the amount by which the tax imposed * * * exceeds the excess of -- (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, * * * ↩
9. Certainly if no returns had ever been filed or if returns had been filed after the notices of deficiency, petitioner would have been required to come forward with evidence as to any deductions he claimed to reduce the deficiencies (and underpayments of tax) determined in such notices.↩