T.C. Memo. 1997-508

UNITED STATES TAX COURT

DONALD J. AND LILLIAN JOY MIRAVALLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10686-94.                    Filed November 12, 1997.

Donald J. Miravalle and Lillian Joy Miravalle, pro se.

<u>Howard P. Levine</u>, for respondent.

MEMORANDUM OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined deficiencies in
and additions to petitioners' Federal income taxes as follows:

Petitioner Donald J. Miravalle

| Tax Year | Deficiency | Additions to Tax Under | |
| | | Sec. 6653(b) | Sec. 6654 |
| --- | --- | --- | --- |
| 1982 | $12,402 | [1]$6,201 | -- |
| 1983 | 74,586 | [1]37,293 | $10,009 |

[1] Plus 50 percent of the interest due on the deficiency.

Petitioner Lillian Joy Miravalle

| Tax Year | Deficiency | Additions to Tax Under | |
| | | Sec.6653(b) | Sec. 6654 |
| --- | --- | --- | --- |
| 1982 | $12,402 | [1]$6,201 | -- |
| 1983 | 74,586 | [1]37,293 | $10,009 |

[1] Plus 50 percent of the interest due on the deficiency.

The issues for decision are whether petitioners:

(1) Had unreported income derived from Schedule C gross receipts and expenses for the taxable years 1982 and 1983;

(2) Had unreported interest income in 1982 and 1983;

(3) Are liable for the additions to tax for fraud under section 6653(b)(1) and (2)[1] for 1982 and 1983; and

(4) Are liable for the addition to tax under section 6654 for 1983.

This case was submitted fully stipulated under Rule 122. Certain facts and exhibits are deemed stipulated by the granting of respondent's motion pursuant to Rule 91(f). The agreed facts

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

resulting from that motion, the stipulation of facts, and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Largo, Florida, at the time they filed their petitions in this case.

## Background

Petitioners are husband and wife and have been married since 1966. In 1977 or 1978, petitioners, who were then about 50 years of age, moved from St. Louis, Missouri, to Florida. During at least the years 1979 through 1986, petitioner Donald J. Miravalle (Mr. Miravalle) was also known as Don King, and petitioner Lillian Joy Miravalle (Mrs. Miravalle) used her maiden name, Joy Smythe, for business activities.[2] During the years 1979 through 1986, petitioners were engaged in the manufacture and sale of marine air conditioners which they conducted through a sole proprietorship known variously as King-Air, King Marine, or King Marine Air Conditioning.

In 1979, petitioners rented industrial space comprising about 1,260 square feet from Vincent Morelli for the purpose of building air conditioners for boats. On November 26, 1982, Mr. Miravalle, using the alias Donald J. King, entered into a 2-year lease for approximately 3,500 square feet of space for the period beginning on January 1, 1983, on behalf of King Marine Air

---

[2] Mrs. Miravalle goes by her middle name Joy, rather than her first name Lillian.

Conditioning with Pinellas Industrial Development Corporation (Pinellas).

Petitioners began purchasing air conditioning controls, reversing valves, and solenoid coils from Ranco Controls of Plain City, Ohio (Ranco), in March of 1981.  They made the following purchases from Ranco:

| Shipping Date | Dollar Amount |
|---------------|---------------|
| July 29, 1981 | $   941.00 |
| Aug. 16, 1983 | 1,303.61 |
| Sept. 21, 1983 | 585.00 |
| Sept. 21, 1983 | 4,930.00 |
| Sept. 23, 1983 | 2,730.00 |

In dealing with Ranco, petitioners represented themselves as Joy Smythe and Don King, president of King Marine.

Petitioners began purchasing compressors from Tecumseh Products of Tecumseh, Michigan, in September of 1983.  During 1983, petitioners made the following purchases from Tecumseh Products:

| Date Charged | Dollar Amount |
|--------------|---------------|
| Oct. 21, 1983 | $14,978.52 |
| Nov. 29, 1983 | 2,130.00 |
| Dec. 19, 1983 | 62.27 |

During the years at issue, petitioners regularly placed advertisements in boating publications.  At least by December of 1983, petitioners advertised having 10 models of marine air conditioners available.

Bank and Investment Accounts

On October 12, 1979, a checking account (Account No. 05-0148-4) was opened in the name of King Air Conditioning at Park National Bank (Park Bank). The type of business listed was marine air conditioning; Donald J. Miravalle was listed as the owner and signatory. On April 1, 1980, the signatory was changed to Lillian Joy Miravalle, who was listed as the then owner. Petitioners deposited business receipts into this account. During 1981, petitioners deposited $57,123.20, including $510.31 in transfers from other bank accounts and no currency, into the King Air Conditioning account at Park Bank. During 1982, petitioners deposited $74,386.60, including $5,600.00 in transfers and $850.00 in currency. During 1983, there were no transfers or currency deposits included in the $127,629.88 that petitioners deposited.

On April 27, 1982, Mrs. Miravalle opened up an individual checking account (Account No. 0049051210) at Fortune Federal Savings and Loan Association (Fortune Federal) using the name Joy Smythe and the Social Security number 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.[3] She listed her place of employment as retired. The deposits into this account included some checks from third parties made out to "Cash", transfers from the Park Bank account, and transfers from the Atlantic National Bank checking account described below.

_____

[3] Mrs. Miravalle's Social Security number is 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.

Beginning in December of 1982, Mrs. Miravalle wrote out checks from the Fortune Federal account to "Cash" and, beginning in September 1983, to King-Air. The latter checks were deposited into the King-Air account at Bank of Indian Rocks described below. Fortune Federal began printing the account holder's Social Security number on the monthly statements with the January 1984 statement. The account was closed on July 30, 1984, and the balance transferred to a money market account at Fortune Federal.

During some portion of the years at issue, Mrs. Miravalle had a checking account (Account No. 14806653249) at Atlantic National Bank in the name Lillian Joy Miravalle. Deposits into this account during 1983 included transfers from the Park Bank account and a check in the amount of $2,960.91 made out to cash with the notation "King Air-AC". On or about August 23, 1983, Mrs. Miravalle opened up a money market savings account (Account No. 54800011355) at Atlantic National Bank in the name Lillian Joy Miravalle by transferring $30,000 from the Atlantic National Bank checking account.

Petitioners maintained two accounts (Account Nos. 104-105-300 and 104-105-312(business checking)) at Bank of Indian Rocks in the name of King-Air, which were opened on or about July 21, 1983, by Mrs. Miravalle. The authorized signatory was Mrs. Miravalle using the name J. Smythe; the Social Security number

provided was 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.[4]   J. Smythe was stated as the sole proprietor of King-Air.  The driver's license number on the account card includes the name Miravalle in parentheses. Petitioners deposited business receipts into account 104-105-300 (the Indian Rocks account).  During 1983, they also deposited at least $25,500 transferred from the Fortune Federal account. Activity in the Park Bank account declined significantly after petitioners opened the Indian Rocks account.

During the years at issue, petitioners made deposits into their bank accounts totaling the following amounts:

| Bank | Name of Account | 1982 | 1983 |
|------|-----------------|------|------|
| Park Bank | King Air Conditioning | $74,386.60 | $127,629.88 |
| Fortune Federal | Joy Smythe | 28,641.60 | 18,417.98 |
| Atlantic Natl. (#54800011355) | Lillian Joy Miravalle | --- | 35,000.00 |
| Indian Rocks | King-Air | --- | 115,224.57 |
| Atlantic Natl. (#14806653249) | Lillian Joy Miravalle | --- | 28,461.41 |
| | TOTALS | $103,028.20 | $324,733.84 |

Respondent has allowed petitioners deductions for business expenses paid from the Park Bank account during the years 1982 and 1983, totaling $50,783.10 and $62,708.23, respectively. During 1983, petitioners wrote checks totaling $106,659.95 on the Indian Rocks account.  Included in these checks were payments to Ranco of $9,548.61 and to Tecumseh Products of $17,164.52.

---

[4]  See supra note 3.

Petitioners also paid their monthly rent of $689.06 to Pinellas from the Indian Rocks account beginning in August 1983.

Petitioners earned at least the following amounts of interest on their bank accounts during the years at issue:

| Bank | Name of Account | 1982 | 1983 |
|------|-----------------|------|------|
| Park Bank | King Air Conditioning | --- | --- |
| Fortune Federal (#0049051210) | Joy Smythe | $613.95 | $1,335.69 |
| Atlantic Natl. (#14806653249) | Lillian Joy Miravalle | --- | [1]825.55 |
| Indian Rocks | King-Air | --- | --- |
| Atlantic Natl. (#54800011355) | Lillian Joy Miravalle | --- | 502.72 |
| | TOTALS | $613.95 | $2,663.96 |

[1] This is the interest earned through Nov. 30, 1983.

During 1984, petitioners had a business account in the name of DJM Enterprises at Flagship Bank. Mrs. Miravalle had a personal account at the same bank in the name of L. J. Miravalle, Social Security number 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.[5]

On December 30, 1983, petitioners opened a joint account at Merrill Lynch. William L. Schools (Mr. Schools) was the Merrill Lynch employee who served as petitioners' financial consultant. When opening their account, petitioners represented their annual salary as $100,000 from their business known as King-Air, which they said they had been operating for 10 years. Mrs. Miravalle told Mr. Schools that petitioners had $400,000 in cash, their

[5] See supra note 3.

life savings, in a "lock box".  Petitioners bought and sold tax-free municipal bonds through their account at Merrill Lynch, investing approximately $10,000 in 1983, $60,000 in 1984, and $40,000 in 1985.  In addition, during 1984, petitioners purchased City of Brooksville bonds for $20,277.50 and New Jersey Economic Development Authority bonds for $41,191.67 through Jay Milton Newton, Inc.,  which they later transferred to their Merrill Lynch account.

Petitioners purchased a 56' sailboat on April 17, 1985, for $125,000.  They purchased two warehouses on April 29, 1986, for $372,000.  Petitioners paid for the sailboat and the warehouses without the use of financing; their Merrill Lynch account served as the conduit for the funds.  Petitioners sold nearly all of the bonds in the Merrill Lynch account to help fund the purchase of the warehouses on April 29, 1986.

### Tax Returns and Audits

Petitioners did not file income tax returns for the taxable years 1979 through 1983.  Petitioners filed joint income tax returns for 1984 through 1986, which they prepared themselves.  Attached to each of the 1984 through 1986 tax returns were Schedules C (Profit or (Loss) from Business or Profession), wherein petitioners reported income and expenses on the cash method of accounting from the manufacture and sale of marine air conditioners operating under the name of DJM Enterprises.  The

Schedule C attached to the 1984 return lists opening inventory as "First Year 0".

Respondent's Revenue Agent Ellen Loeb (Ms. Loeb) conducted an audit of petitioners' 1985 tax return. Petitioners told Ms. Loeb that they had been retired since 1976, and then started their current business in 1984. In response to Ms. Loeb's inquiry about their 1985 bank accounts, petitioners failed to disclose the King-Air account at Indian Rocks.

### Previous Litigation

Petitioners were convicted on December 14, 1990, of attempting to evade their 1984 through 1986 income tax liabilities in violation of section 7201 and of conspiracy beginning in 1983 and continuing thereafter to defraud the United States in violation of 18 U.S.C. sec. 371 (1994) by attempting to evade and defeat the income tax they owed in violation of section 7201. This Court issued its opinion in the civil case for those taxable years in Miravalle v. Commissioner, T.C. Memo. 1994-49.

### Respondent's Determination

Using information contained in petitioners' bank records, respondent determined the following with respect to petitioners' taxable income for the years currently at issue:

|                      | 1982       | 1983       |
|----------------------|------------|------------|
| Schedule C Receipts  | $86,559    | $224,331   |
| Schedule C Expenses  | (50,783)   | (62,708)   |
| Interest Income      | 610        | 2,927      |
| Personal Exemption   | (1,000)    | (1,000)    |
|                      |            |            |
| Total Adjustments    | $35,386    | $163,550   |
| Self-employment Tax  | 3,029      | 3,338      |

In determining petitioners' Schedule C receipts, respondent allowed for nontaxable transfers in the amounts of $15,600 and $102,500 for 1982 and 1983, respectively, and other miscellaneous nontaxable items. When determining 1983 expenses, respondent analyzed items paid from the Park Bank account only and failed to consider any items paid from the Indian Rocks account. Respondent attributed 100 percent of the income and expenses as listed above to each petitioner, and treated each as married, filing separately. On March 23, 1994, respondent issued two notices of deficiency for the years at issue, one to each petitioner.

Discussion

Schedule C Gross Receipts and Expenses

Bank deposits are prima facie evidence of income. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992) and cases cited therein. When using the bank deposits method of reconstructing income, respondent must take into account any nontaxable source of income and deductible expense of which respondent has knowledge. Id. In respect of the

underlying deficiencies, petitioners have the burden of proving respondent's determination incorrect. Rule 142(a); <u>DiLeo v. Commissioner</u>, 96 T.C. at 869.

Petitioners' position is that they were not "in business" during the years at issue, that they were preparing in late 1983 for their opening on January 1, 1984, and that, although they may have sold a few experimental models, they certainly did not make a profit. They also assert that some of the deposits were reimbursements for items which they purchased at a discount for others.

In 1979, petitioners opened their business bank account at Park Bank and rented space to build marine air conditioners. They advertised regularly during 1982 and 1983. During 1981, 1982, and 1983, they made regular deposits of business receipts. We find they were engaged in business activities during the years at issue. In calculating petitioners' business receipts, respondent has allowed for nontaxable transfers between petitioners' bank accounts. Petitioners have presented no evidence to counter respondent's determinations as to the amounts of petitioners' receipts. Thus, we sustain those determinations, except that, since petitioners jointly operated their business but are considered to be filing their tax returns separately,[6]

---

[6] Since petitioners failed to file any tax returns for the years at issue and have filed their petition with the Court, they are precluded from being treated on the basis of joint return
(continued...)

only half of the receipts should be attributed to each petitioner.

Respondent disallowed checks to Vincent Morelli, petitioners' landlord, totaling $951 ($317/mo.) in January, February, and March of 1982.  In later months, a slightly higher amount was paid to VJ King Enterprises, which respondent did allow.  We conclude that petitioners are entitled to deduct the $951.00 in addition to the amount of $50,783.10 allowed in respondent's determination, or a total of $51,734.10 for 1982.

In determining petitioners' 1983 expenses, respondent did not allow any expenditures from the Indian Rocks account, even though, after opening that account in July, petitioners rarely used the Park Bank account.  During 1983, petitioners paid $9,548.61 to Ranco, $17,164.52 to Tecumseh Products, and $2,756.24 (4 months x $689.06) in rent from the Indian Rocks account.  It is highly likely other allowable business expenses were among the $106,659.95 paid from the Indian Rocks account during 1983, but petitioners have not substantiated the purposes of any further checks from that account.  We have added the foregoing three amounts, totaling $29,469.37, to the $62,709.23 of expenses allowed by respondent, or a total of $92,178.60 for

---

[6](...continued)
status.  Thompson v. Commissioner, 78 T.C. 558, 561 (1982); Roberts v. Commissioner, T.C. Memo. 1996-346.

1983.  As with the receipts, one-half of the expenses for each year are allocated to each petitioner.

Interest Income

Petitioners argue that because no tax is otherwise owed and thus no returns are required, the matter of interest income is immaterial.  Petitioners have presented no other arguments as to why the interest is not included in gross income under section 61(a)(4).  The record generally supports respondent's determinations of the amounts of interest income received during the years at issue.[7]  Although the underlying bank accounts were in Mrs. Miravalle's name, because the funds deposited therein were the proceeds of petitioners' business, we find that, as with the business income, petitioners share the interest income. Thus, we allocated one-half to each petitioner.

Additions to Tax For Fraud

For the years at issue, section 6653(b) imposes an addition to tax of 50 percent of the underpayment of tax if any part of the underpayment is due to fraud, plus an amount equal to 50 percent of the interest on the portion of the underpayment attributable to fraud.  Respondent has the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142;

---

[7]  Petitioners' bank statements establish $2,663.96 of the $2,927.00 which respondent has determined in interest income for 1983.  The difference appears to be the Dec. 1983 interest on the Atlantic Natl. money market account, which monthly statement is not in the record.

Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63.  For the addition to tax under section 6653(b)(1) to apply, respondent must establish for each year that (1) the taxpayer has underpaid the taxes and (2) some part of the underpayment is due to fraud.  Sec. 6653(b)(1); DiLeo v. Commissioner, 96 T.C. at 873.  For the addition to tax under section 6653(b)(2) to apply, respondent must establish the portion of the underpayment attributable to fraud.  Sec. 6653(b)(2); DiLeo v. Commissioner, supra at 873.

To prove an underpayment of tax, respondent cannot rely on the taxpayer's failure to satisfy his or her burden of proof as to the underlying deficiency.  Parks v. Commissioner, 94 T.C. 654, 661 (1990).  When allegations of fraud are intertwined with unreported and indirectly reconstructed income, respondent can prove an underpayment by (1) proving a likely source of the unreported income or (2) where the taxpayer alleges a nontaxable source, by disproving the alleged nontaxable source.  DiLeo v. Commissioner, supra at 873-874.

Based on the facts herein, respondent has shown that petitioners were engaged in a business activity during the years at issue and failed to report their gross receipts.  Unreported receipts alone, however, do not establish an underpayment of tax, unless such unreported receipts are greater than the cost of goods sold plus deductible expenses.  See Franklin v. Commissioner, T.C. Memo. 1993-184.  Petitioners have contended

throughout these proceedings that they have no tax liability for the years at issue because their business made no profit during these years. Where respondent has established unreported income and the taxpayer claims that there are offsetting deductions, the taxpayer has the burden to come forward with evidence as to the claimed deductions, in which event the burden of proof to disprove the deductions then rests with respondent. See id. and the cases discussed therein. Petitioners have not produced any evidence of deductions in excess of the amounts allowed by respondent, as previously increased. See supra pp. 12-13.

A comparison of the receipts and expenses for 1982 clearly establishes an amount of business and interest income which would require the filing of a tax return. Accordingly, we find that respondent has established some underpayment of tax for 1982.

For 1983, respondent has not addressed the deductibility of the $106,659.95 paid from the Indian Rocks account. Nonetheless, even if all $106,659.95 were deductible, petitioners still would have net business income in 1983, plus interest income. Thus, we find that respondent has established some underpayment of tax for 1983.

To establish fraud, respondent must show that the taxpayer intended to evade a tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. Korecky v. Commissioner, supra; DiLeo v. Commissioner, supra; Parks v. Commissioner, 94 T.C. at 660-661. Fraud is never

presumed. Cochrane v. Commissioner, 107 T.C. 18, 28 (1996). Since direct proof of a taxpayer's intent is rarely available, fraud may be established by circumstantial evidence and reasonable inferences drawn from such evidence. Korecky v. Commissioner, supra; Cochrane v. Commissioner, supra. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Bagby v. Commissioner, 102 T.C. 596, 609 (1994). Mere failure to file tax returns is not sufficient to establish fraud. Kotmair v. Commissioner, 86 T.C. 1253, 1261 (1986).

Respondent points to the purchase of substantial assets as one indicator of petitioners' fraud. Respondent also alleges that petitioners chose tax-free bonds as their investment vehicle so as to avoid the reporting of taxable interest. However, only $10,000 of bonds were purchased during the years at issue and that purchase occurred on December 30, 1983. Petitioners purchased the sailboat and the warehouses in 1985 and 1986, respectively. Respondent has not shown a connection between the unreported income for the years 1982 and 1983 and these assets. The latter purchases and the convictions for criminal tax evasion for the years 1984 through 1986 do not shed any light on petitioners' intent with respect to the years at issue in the instant case. The use of one's maiden name alone is not indicative of fraud, particularly where, as here, Mrs. Miravalle used her maiden name for business purposes.

The account opened at Fortune Federal in 1982 with one incorrect digit in the Social Security number is just as likely to have been a typographical error as intentional. However, during 1983, petitioners opened the Indian Rocks account under the Social Security number ending with -3540. The repositioning of all of the last four digits of the Social Security number cannot be ascribed to typographical error, especially since Mrs. Miravalle's personal account at Flagship Bank had the same erroneous Social Security number. During 1983, petitioners withdrew funds from the Park Bank account, deposited them into their personal accounts, and after July 21, 1983, transferred funds to the Indian Rocks account. Petitioners then used the Indian Rocks account as their primary business account instead of the Park Bank account. Petitioners' use of the Indian Rocks account is a clear indication of petitioners' intent to conceal their business income.

Finally, we note that petitioners were convicted under 18 U.S.C. 371 (1994) of conspiracy commencing in 1983 to defraud the United States by evading the tax due from them in violation of section 7201. This constitutes evidence of fraud for 1983.

Based on the foregoing facts and the record as a whole, we find that respondent has established that some portion of the underpayment for 1983 was due to fraud. For 1982, while petitioners failed to file a return, we find insufficient evidence of other badges of fraud. Therefore, petitioners are

liable for the addition to tax for fraud under section 6653(b)(1) for the year 1983 only.

For purposes of the section 6653(b)(2) addition to tax, respondent must prove those portions of the underpayments that are due to fraud. We find that the underpayment of tax on petitioners' business income for 1983 is attributable to fraud. However, the reason petitioners are not entitled to deduct the 1983 payments from the Indian Rocks accounts beyond the $29,469.37 discussed supra, is because of the lack of evidence from which to determine business purpose. Petitioners' failure to meet the burden of proof is insufficient to establish fraud as to this amount. Thus, for the purposes of the addition under section 6653(b)(2) only, petitioners' business income for 1983 should be offset by the remaining $77,190.58 ($106,659.95 less $29,469.37). Cf. Van Vorst v. Commissioner, T.C. Memo. 1993-353.

With respect to petitioners' unreported interest income, we conclude that respondent has not provided sufficient evidence to conclude that the addition to tax under section 6653(b)(2) should attach.

Addition to Tax under Section 6654

Section 6654 imposes an addition to tax for failure to pay estimated tax. Petitioners' only argument which respect to this addition to tax for 1983[8] is that, since there is no underlying

---

[8] Respondent did not seek this addition to tax for 1982.

deficiency, there can be no addition.  As petitioners have not overcome the burden of showing there is no deficiency, we hold they are liable for this addition to tax.

In keeping with the above holdings,

<u>Decision will be entered</u>

<u>under Rule 155</u>.