Clayton M. KORECKY, Jr.,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 85–3387.

United States Court of Appeals,
Eleventh Circuit.

Feb. 14, 1986.

Stephen G. Salley, Akerman, Senterfitt & Eidson, Orlando, Fla., for petitioner-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Mary Frances Clark, Michael L. Paup, Chief, Appellate Section, Phoebe A. Mix, U.S. Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before HILL, Circuit Judge, TUTTLE and HENDERSON,* Senior Circuit Judges.

PER CURIAM:

In this appeal Clayton M. Korecky, Jr. challenges the decision of the United States Tax Court imposing a fifty-percent civil penalty against him for tax fraud. The Tax Court found that Korecky had understated his tax liability for the years 1972, 1973 and 1974 and that this tax deficiency was the result of fraud. On this appeal, Korecky does not challenge the judgment of tax liability. His sole contention is that the Tax Court erred in finding fraud and imposing the civil penalty. We disagree and affirm the judgment of the Tax Court.

Korecky, a resident of Cocoa, Florida, completed his formal education in the eighth grade. From 1962 to 1972, he owned and operated a small motel. In the mid-1960s, he began crab fishing and at first sold his catch to commercial crab processors. In 1970 Korecky started his own crab processing business on the site of his motel. This operation, Clayton's Crab Company, was a proprietorship and initially employed one person. By the mid-1970s, this venture had grown considerably and consisted of wholesale distribution of processed crab meat, retail sales of crab and other seafood, and sales of bait and equipment to the local crabbers who supplied him with live crab. In 1974, the company employed fifteen persons.

In 1972 Korecky contracted with James Preece of Atlantic Bookkeeping to perform his bookkeeping and tax work. Preece prepared income and expense statements from documents provided by Korecky. Korecky provided two forms of income data: unnumbered wholesale sales invoices and monthly summaries of retail sales. Korecky did not furnish Preece with the retail sales register tapes and reported no income from his bait and equipment sales to local crabbers. Preece prepared expense statements from cancelled checks and bank statements. He also balanced the bank statements and prepared Korecky's sales and income tax forms. Preece is not a certified public accountant and never performed an audit of the records and financial procedures of Korecky's company.

For the years in question, 1972 through 1974, Korecky reported taxable income of $9,082.64, $6,385.21 and $2,360.78 respectively. Korecky claimed a corresponding tax liability of $1,967.81, $1,694.20 and $586.04. Despite these relatively low income totals, the balances of Korecky's business bank accounts increased by $54,500.00 and he acquired approximately $130,000.00 in personal investments and business assets during these three years.

The Internal Revenue Service began an audit of Korecky's federal income tax returns in 1975. Using the net worth method, the IRS calculated that Korecky's actual taxable income for each year was $47,317.26, $70,890.98 and $46,667.57. These revised taxable income totals produced tax liabilities of $11,375.24, $23,697.93 and $15,897.87. The IRS assessed tax deficiencies of $9,407.43, $22,003.73, and $15,311.83 and imposed the fifty-percent civil fraud penalty provided by I.R.C. § 6653(b). In 1979, Korecky was charged, but acquitted of criminal tax evasion in the United States District Court for the Middle District of Florida.

On March 2, 1981, Korecky petitioned the Tax Court for a redetermination of the deficiency and penalty. He stipulated to the deficiency during the course of the Tax

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

Court proceedings, but continued to challenge the fraud penalty. On February 13, 1985, the Tax Court upheld the penalties, which totaled $23,361.51.

I.R.C. § 6653(b) provides that "If any part of any underpayment ... of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." The IRS bears the burden of proving fraud, which must be established by clear and convincing evidence. I.R.C. § 7454(a); *Marsellus v. Commissioner*, 544 F.2d 883, 885 (5th Cir.1977);[1] *Bryan v. Commissioner*, 209 F.2d 822, 825 (5th Cir. 1954), *cert. denied*, 348 U.S. 912, 75 S.Ct. 289, 99 L.Ed. 715 (1955). To carry this burden, the IRS must prove that the taxpayer intended to evade taxes that he knew or believed to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. *Cefalu v. Commissioner*, 276 F.2d 122, 128–29 (5th Cir.1960); *Eagle v. Commissioner*, 242 F.2d 635, 637 (5th Cir.1957). Fraud need not be established by direct evidence, but can be shown by surveying the taxpayer's entire course of conduct and drawing reasonable inferences therefrom. *Biggs v. Commissioner*, 440 F.2d 1, 5 (6th Cir.1971); *Goldberg v. Commissioner*, 239 F.2d 316, 320 (5th Cir.1956). A finding of fraud by the Tax Court is a factual determination and will not be reversed by this court unless the finding is clearly erroneous. *Marsellus v. Commissioner*, 544 F.2d at 885; *Webb v. Commissioner*, 394 F.2d 366, 378 (5th Cir.1968).

To sustain its fraud determination, the Tax Court found a substantial and consistent understatement of income, a failure to maintain complete and accurate records and a failure to cooperate fully with the IRS during its investigation. The court also rejected Korecky's defenses that he was unsophisticated in financial matters and had relied exclusively on his bookkeeper. We address each of these points in turn.

Although a mere understatement of income does not constitute proof of fraud, this court has recognized that a "[c]onsistent and substantial understatement of income is by itself strong evidence of fraud." *Merritt v. Commissioner*, 301 F.2d 484, 487 (5th Cir.1962). In this case, Korecky stipulated that he had understated his taxable income by approximately $147,000.00 over a three year period. This stipulation was sufficient to sustain the Tax Court's finding that Korecky had made a "consistent and substantial understatement of income."

The Tax Court also pointed to Korecky's poor record-keeping practices. A taxpayer's failure to maintain complete and accurate records is evidence of fraud. *See Merritt v. Commissioner*, 301 F.2d at 487; *Bryan v. Commissioner*, 209 F.2d 822, 828 (5th Cir.1954), *cert. denied*, 348 U.S. 912, 75 S.Ct. 289, 99 L.Ed. 715 (1955). It is clear from the record in this case that Korecky failed to keep complete and accurate records of his sales income. He utilized unnumbered wholesale invoices, which prevented a full accounting for all wholesale sales. He also provided his bookkeeper with only a summary of his retail sales, rather than the actual sales register tapes. This procedure prevented a full disclosure of retail sales. Most significantly, he furnished his bookkeeper with no information on his bait and equipment sales to local crabbers. *See* Record on Appeal, Doc. 1, pp. 57–58.

As final evidence of fraud, the Tax Court cited Korecky's failure to fully cooperate with the IRS during its audit. Failure to cooperate constitutes evidence of fraud. *See Estate of Granat v. Commissioner*, 298 F.2d 397, 398 (2d Cir.1962) (per curiam); *cf. Toledano v. Commissioner*, 362 F.2d 243, 247 (5th Cir.1966). Korecky disputes this factual finding and argues that he cooperated in full with the IRS. Although the record discloses that Korecky turned over most of his financial records to

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Cir- cuit Court of Appeals decided prior to October 1, 1981.

the IRS, *see, e.g.,* Record on Appeal, Doc. 1, pp. 158–59, it also shows that he failed to cooperate in certain aspects of the investigation. In particular, Korecky sought to limit the IRS investigation of his bait and equipment sales, denied the IRS access to his safe deposit box and tried to prevent the IRS from interviewing his wife. *See* Record on Appeal, Doc. 1, pp. 126–27. Given this factual support, we cannot say that the Tax Court's finding was clearly erroneous.

█ In defense of the accusation of fraud, Korecky contends that he was inexperienced in financial matters and that he relied on the expertise of his bookkeeper. *See Eagle v. Commissioner,* 242 F.2d 635, 638 (5th Cir.1957). It may be true that he had limited formal training in accounting and finance and, as such, might not be expected to know all of the tax and financial aspects of his business. However, he did have the practical experience gained from operating his own business for over a decade. As such, he cannot be excused from keeping accurate records of sales receipts, which is a rather straightforward bookkeeping task. *See Webb v. Commissioner,* 394 F.2d 366, 379–80 (5th Cir.1968). Moreover, a reasonable person would have known that the low sales receipts reported contradicted the thriving nature of his business and his strong cash flow. Nor may Korecky use reliance on his bookkeeper to excuse his conduct. Reliance on a bookkeeper or accountant is no defense to fraud if the taxpayer failed to provide the accountant "with all of the data necessary for maintaining complete and accurate records." *Merritt v. Commissioner,* 301 F.2d at 487. Since Korecky failed to furnish complete data on his sales receipts, he cannot claim that his bookkeeper was at fault.

█ In summary, we find that the Tax Court had sufficient evidence to support its finding of fraud. As such, the judgment of the Tax Court is AFFIRMED.