**In re Ira M. KOGER, Debtor.**

No. 00–7158–3F1.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 23, 2001.

Clarence F. Frazier, James A. Fischette, Jacksonville, FL, for Debtor.

Donna A. Bucella, Robert L. Welsh, Scott M. Grossman, U.S. Department of Justice, Washington, D.C., for the United States.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion to Bifurcate Trial of Debtor's Objection to Claim Number 3 ("the Motion to Bifurcate") filed by Ira M. Koger ("Debtor") on February 15, 2001. (Doc. 34.) The United States of America ("the United States") filed a Response to the Motion to Bifurcate on March 5, 2001. (Doc. 43.) The Court held a hearing on the Motion to Bifurcate on April 5, 2001, and took the matter under advisement. Upon review of the evidence presented at the hearing and upon review of the arguments and the submissions of counsel, the Court finds it appropriate to deny the Motion to Bifurcate.

### FINDINGS OF FACT

On September 15, 2000, Debtor voluntarily filed a petition for Chapter 11 bankruptcy protection.

On December 28, 2000, the United States, through the Internal Revenue Service ("the IRS") filed a Proof of Claim ("Claim 3") against Debtor in the amount of $18,865,519.96 for unpaid taxes and accompanying penalties. Specifically, the United States claims that Debtor failed to report dividends and capital gains from his shares in Woodcock–Koger Corporation ("Woodcock–Koger") during the years 1985–1989, failed to report income from the Ira and Nancy Koger Foundation during the years 1985–1989, and failed to report income from Koger Properties, Inc. during the years 1985–1989.

The United States further asserts that Debtor willfully and fraudulently failed to report the dividends, capital gains and income for the purpose of evading individual income tax liability.

The United States contends that $11,213,041.25 of Claim 3 is entitled to priority status pursuant to 11 U.S.C. § 507(a)(8).

On February 9, 2001, Debtor filed an Objection to Claim Number 3 ("the Objection to Claim 3"). (Doc. 33.) Debtor argues that he did not collect any unreported dividends, unreported capital gains, or unreported income during the years 1985 to 1989. Debtor also asserts that an agreement between the United States and Woodcock–Koger entered into as settlement of issues raised during Woodcock–Koger's Chapter 11 Case, No. 94–3434–3F1, collaterally estops the United States from claiming any tax liability in the instant case. Debtor finally raised a statute of limitations defense to any tax liability for the years 1985 to 1989 pursuant to 26 U.S.C. § 6501.

On February 15, 2001, Debtor filed the Motion to Bifurcate. Debtor argues that the trial on the Objection to Claim 3 should be bifurcated into two stages. First, the parties would conduct discovery and trial on Debtor's statute of limitations defense which, if successful, would preclude further discovery and litigation on Claim 3. Specifically, Debtor requests that the Court hear his claim that the United States cannot show actual fraud and thus defeat the § 6501 statute of limitations defense because Debtor relied on a preparer when filing returns from 1985 to 1989. If Debtor's statute of limitations defense fails, then the parties would conduct discovery on whether or not any income went unreported and the corresponding amount of any unpaid taxes.

Debtor contends that hearing the statute of limitations first, as an independent "mini-trial," might save the Court and the parties time and resources by avoiding the lengthy and costly discovery process on the complex unreported income issues and by avoiding a lengthy trial on those issues. Debtor also argues that a full-scale trial will be especially wasteful because it will have to be particularly spaced and timed to account for Debtor's advanced age and ill health.

On March 5, 2001, the United States responded to the Motion to Bifurcate. The United States asserts that bifurcation of discovery would unfairly limit their ability to contest the statute of limitations defense and that bifurcation of trial would result in duplicative presentation of evidence. According to the United States, the evidence necessary to prove fraud, which would defeat Debtor's statute of limitations defense, is the same evidence necessary to prove the existence of unreported income and unpaid taxes. Specifically, the United States argues that evidence of unreported income constitutes evidence of fraud as well as evidence of tax liability. If evidence of unreported income is relevant to the fraud inquiry central to the statute of limitations defense, then barring discovery on unreported income would unfairly impair the United States' discovery on the statute of limitations defense, and bifurcating trial would result in duplicative presentation of evidence of unreported income.

## CONCLUSIONS OF LAW

### I. THE STANDARDS FOR BIFURCATION OF TRIAL AND/OR DISCOVERY

#### A. General bifurcation standard

 Pursuant to Rule 42(b), Federal Rules of Civil Procedure, and Rule 7042, Federal Rules of Bankruptcy Procedure, a bankruptcy court may bifurcate a trial and/or discovery on a contested matter where it is convenient, where it prevents prejudice, where it is conducive to judicial economy, or where separately triable issues arise. A determination of whether or not to bifurcate trial and/or discovery is left to the discretion of a trial court. *See Home Elevators, Inc. v. Millar Elevator Service Co.,* 933 F.Supp. 1090, 1091 (N.D.Ga.1996). Bifurcation should not be the usual course that is followed. *See id.* A party requesting bifurcation has the burden to show that bifurcation is warranted in a particular case. *See id.*

#### B. Specific analogous standard: bifurcation in patent litigation

The Court finds it useful to employ the standards applied to bifurcation in patent litigation to the instant case. Patent litigation presents the most common venue for bifurcation, because issues of liability for infringement and corresponding damages are often distinct and distinctly complex. *See F & G Scrolling Mouse v. IBM*

*Corp.,* 190 F.R.D. 385, 387 (M.D.N.C.1999). In fact, motions to bifurcate have become a textbook maneuver in virtually all patent litigation. *See Johns Hopkins Univ. v. Cellpro,* 160 F.R.D. 30, 34 (D.Del.1995). No doubt the bifurcation suggested by Debtor in the instant case could become a similarly common litigation tactic in tax cases potentially barred by the § 6501 statute of limitations.

■ In *F & G Scrolling Mouse,* the district court summarized the factors courts generally weigh in determining whether or not to bifurcate a patent case. *See F & G Scrolling Mouse,* 190 F.R.D. at 387–393. This Court finds four of those factors useful in analyzing the wisdom of bifurcation generally: (1) Separability of the issues; (2) Simplification of discovery and the conservation of resources; (3) Prejudice to parties; and (4) Suitability of bifurcating trial but not discovery. *See id.*

■ The separability inquiry involves measurement of the degree of evidentiary entanglement among the issues to be bifurcated. *See F & G Scrolling Mouse,* 190 F.R.D. at 389–390. "Certain infringement defenses available to a defendant may involve factual issues which pertain to the willfulness inquiry as well, and for this reason, the Court should not order bifurcation." *Id.* Generally, if an "evidentiary overlap" exists, then any overlapping issues should not be bifurcated. *See id.* "[S]everal of the witnesses already identified by the parties can be expected to testify as to matters related to both liability and damages ... judicial economy is not served if the same witnesses have to be called at both trials." *Home Elevators,* 933 F.Supp. at 1092.

■ The simplification inquiry involves determining whether bifurcation of trial and/or discovery might result in a faster and cheaper resolution to a dispute. *See F & G Scrolling Mouse,* 190 F.R.D. at 390. "The cost of discovery and trial preparation, including expert witnesses, may convince the court that a stay of discovery and a second trial is best." *Id.* A measurement of a case's supposedly unique and compelling complexity should be made at this juncture. A party seeking bifurcation bears the burden of showing that a particular issue is so complex that it would best serve judicial economy to risk holding two separate trials in the hopes of avoiding that issue entirely. *See Home Elevators,* 933 F.Supp. at 1091.

■ The prejudice inquiry involves determining the cost of bifurcation to each party. *See F & G Scrolling Mouse,* 190 F.R.D. at 391. "[B]ifurcating a case [potentially] adds costs to the parties in the form of the additional expense associated with two trials and adds delay in final resolution ... the court should examine the individual situation of each party to ensure that no one party is placed at a distinct disadvantage as a result of the court's decision." *Id.*

■ Finally, a court may analyze these factors and determine that trial should be bifurcated but that discovery should nevertheless go on unimpeded. *See F & G Scrolling Mouse,* 190 F.R.D. at 392. Generally this option should be reserved for situations where bifurcation is ordered solely to alleviate jury confusion, or where the inherent nature of a matter does not reveal whether or not any "evidentiary overlap" will arise. *See id.*

## II. THE STANDARD FOR DETERMINING TAX LIABILITY FOR UNREPORTED INCOME UNDER § 6653 AND § 6501

The Court finds that, because it must determine the inevitability of any "evidentiary overlap" from bifurcation and because it must determine the inherent com-

plexity of the matter to be bifurcated, it must also outline the elements of the issue before it. The substantive standard to be applied to the matter to be bifurcated will largely determine the necessity of bifurcation by revealing the separability and complexity of the issues involved.

A three-year statute of limitations applies to actions to assess and collect back taxes and penalties. *See* 26 U.S.C. § 6501(a). However, numerous exceptions to this statute of limitations allow the IRS to assess taxes and to pursue actions rooted in alleged evasion more than three years past. Section 6501(c) provides, in relevant part,

> (c) Exceptions—
>
> (2) Willful attempt to evade tax—In case of a willful attempt in any manner to defeat or evade tax imposed by this title ... the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

26 U.S.C. § 6501(c) (2001).

Courts generally determine willfulness of evasion by employing the standard for the fifty-percent willful evasion penalty found in 26 U.S.C. § 6653. Courts determining "willfulness" under § 6653 generally employ the classic definition of specific intent to defraud when evaluating an alleged evader's mental state. *See Korecky v. Commissioner of Internal Revenue,* 781 F.2d 1566, 1568 (11th Cir.1986). In a § 6653 willfulness penalty suit, "[t]he IRS bears the burden of proving fraud, which must be established by clear and convincing evidence." *See id.* "To carry this burden, the IRS must prove that the taxpayer intended to evade taxes that he knew or believed to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes." *Id.*

Therefore, in order to defeat a § 6501 statute of limitations defense to an assessment and/or to an action to collect, the United States must prove that allegedly unpaid taxes more than three years old were evaded with specific fraudulent intent. Such fraudulent intent need not be established by direct evidence, but may be sufficiently proven through inferences available from a purported evader's entire course of conduct. *See Korecky,* 781 F.2d at 1568. The *Korecky* court cited three key factors tending to establish fraudulent intent: (1) a substantial and consistent understatement of income; (2) a failure to maintain complete and accurate records; and (3) a failure to cooperate fully with the IRS during its investigation. *See id.* Most pertinent to a motion to bifurcate a § 6501 statute of limitations defense is the relevance of any evidence of understatement. "Although a mere understatement of income does not constitute proof of fraud ... a '[c]onsistent and substantial understatement of income is by itself strong evidence of fraud.'" *Id.* (quoting *Merritt v. Commissioner,* 301 F.2d 484, 487 (5th Cir.1962)).

An alleged evader may defeat such accusations of fraud by presenting sufficient evidence to show that alleged evader relied on the advice of a professional tax return preparer supplied with all relevant tax information. *See Korecky,* 781 F.2d at 1569. Such reliance logically negates the existence of any specific fraudulent intent to evade on the part of an alleged evader.

## III. APPLICATION TO THE INSTANT CASE

The Court finds that an application of the above factors advises against bifurcation of the Objection to Claim 3.

First, the Court finds that the issue to be bifurcated, namely the "reliance on pre-

parer" element of the statute of limitations defense, is not readily separable from the remainder of the issues raised by the Objection to Claim 3. Debtor presented no compelling justification for separating one element of an affirmative defense from the context of the Objection to Claim 3. Nor did Debtor convince the Court that it would be appropriate to bifurcate discovery and trial on the statute of limitations defense as a whole. There is considerable evidentiary overlap between the fraud-centered statute of limitations defense and the issue of liability for unreported income. Specifically, any evidence of unreported income is highly probative to both the statute of limitations defense and to the issue of tax liability. Therefore, staying discovery of evidence of unreported income would unduly hamper the United States' ability to contest the statute of limitations defense. Bifurcation of trial might also result in duplicative presentation of evidence on unreported income.

Second, the Court finds that the issue of liability for unreported income is not so complex that bifurcation might significantly simplify discovery or trial or conserve resources. Specifically, the Court finds that the liability issue is not so complex as to justify the risk of holding two separate trials should the statute of limitations defense fail. Certainly a tax dispute involving corporate and individual documentary and testimonial evidence going on sixteen years old might be difficult and costly. However, the mere fact that discovery might be cumbersome and trial lengthy does not justify splintering the matter into bits easier for the parties and attorneys to handle. The Federal Rules of Civil Procedure do not provide a guarantee that litigation will be easy.

Third, the Court finds that bifurcation will not cause any undue prejudice to either party. Neither party argued that bifurcation would result in undue prejudice.

Finally, because the Court finds bifurcation of discovery and trial entirely inappropriate, it need not address the wisdom of maintaining unitary discovery despite bifurcation of trial.

Therefore, the Court finds that the factors weigh strongly against bifurcating discovery or trial on the Objection to Claim 3.

## CONCLUSION

The Court finds that the Motion to Bifurcate should be denied because there is substantial "evidentiary overlap" between the statute of limitations defense and the unreported income issues, and because bifurcation would not alleviate any compelling complexity inherent in the Objection to Claim 3.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.