T.C. Memo. 2007-62

UNITED STATES TAX COURT

TIMOTHY R. AND CINDY I. FULLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13007-05.               Filed March 19, 2007.

<u>Anthony V. Diosdi</u> and <u>Joy E. Gray</u>, for petitioners.

<u>Daniel J. Parent</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and
penalties with respect to petitioners' Federal income tax as
follows:

| Year | Deficiency | Penalty I.R.C. Sec. 6663 |
|------|-----------|--------------------------|
| 1998 | $43,020 | $32,265.00 |
| 1999 | 42,510 | 30,672.75 |
| 2000 | 49,029 | 36,771.75 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by the parties, the sole issue for decision is whether petitioners' underpayments of taxes for the years in issue were due to fraud and subject to the civil fraud penalty under section 6663 or, in the alternative, whether petitioners are liable for the accuracy-related penalty pursuant to section 6662 for substantial understatements in their Federal tax liability for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Vacaville, California, at the time that they filed their petition.

Petitioners operated a residential painting business known as Custom Painting during 1998, 1999, and 2000. In early 2000, petitioners began an additional business known as TC's Discount Parts, in which they sold motorcycle accessories.

Petitioners' tax returns for the years in issue were prepared by Wayne Greenfield (Greenfield), an enrolled agent in Chico, California. Petitioners provided Greenfield with schedules of gross receipts, cost of goods sold, and other expenses for 1998, 1999, and 2000 to aid him in the preparation of their tax returns for those years. Petitioner Cindy I. Fuller (Mrs. Fuller) maintained the books and records for both of petitioners' businesses. She prepared the figures to be entered on petitioners' tax returns and provided them to Greenfield. Other than contracts for the purchase of equipment, Mrs. Fuller did not provide to Greenfield any underlying documents to substantiate how petitioners determined the figures that they submitted to him to be entered on their tax returns.

Petitioners filed their 1998 Federal income tax return on October 19, 1999. They filed their 1999 tax return on December 17, 2000. They filed their 2000 tax return on June 7, 2002, after receiving from the IRS a letter requesting that it be filed.

On their Schedules C, Profit or Loss From Business, petitioners understated their gross receipts by $73,624 for 1998, $26,038 for 1999, and $9,931 for 2000. They overstated their costs of goods sold for materials and supplies by $27,768 for 1998, $49,019 for 1999, and $113,402 for 2000. They overstated their depreciation expenses by $17,558 for 1998, $26,037 for

1999, and $14,683 for 2000. They overstated their car and truck expenses by $11,273 for 1998, $7,120 for 1999, and $6,714 for 2000. They also overstated their workers' compensation insurance expenses by $2,008 for 1999.

Petitioners overstated their expenses for telephone and cell phone expenses for 1998 by $4,420, reported those expenses correctly for 1999, and understated those expenses by $437 for 2000. Petitioners also understated their labor expenses by $3,265 for 1999 and $2,493 for 2000. Despite these instances where petitioners understated their deductible expenses, the combined discrepancies listed above substantially decreased petitioners' reported net income and income tax liability. Due to the understatement of net income reported on their tax returns, petitioners claimed and received earned income tax credits of $3,730 for 1998 and $3,770 for 1999.

In various loan applications with Redding Bank of Commerce (Redding Bank) from 1998 through 2000, petitioners represented that they had a monthly income of between $5,000 and $6,556. Petitioners also provided to Redding Bank a copy of a 1998 Form 1040, U.S. Individual Income Tax Return, that did not match the return that was actually filed with the IRS by petitioners for that year. The 1998 return that was provided to Redding Bank listed petitioners' Schedule C income as $44,005, while the return that was actually filed by petitioners for 1998 reported

only $10,058 of Schedule C income.  Petitioners also submitted to Redding Bank a document entitled "Individual Financial Statement" dated April 5, 2000, in which they represented that they had wages of $150,000, business net income of $349,000, and total income of $499,000 for 1999.  They also provided to Redding Bank a profit and loss statement for 1999 indicating gross receipts of $489,049.55, while petitioners' filed tax return reported only $441,032 in gross receipts.

Petitioners purchased several vehicles in 1999 and 2000.  In April 1999, they purchased a 1999 GMC van for a monthly payment of $715.39.  On the credit application for that purchase, petitioners represented that their annual gross income was $350,000.  In September 1999, petitioners made a downpayment of $5,000 to purchase a 2000 Ford pickup truck for a monthly payment of $627.20.  On their credit application for that purchase, petitioners represented that their gross monthly income from employment was $13,300.  Upon purchase of the 2000 Ford pickup truck, petitioners paid $3,237.98 in cash to have off-road alterations made to the vehicle.  In August 2000, petitioners made a downpayment of $2,000 to purchase a 2000 Chevrolet pickup truck for a monthly payment of $592.82.  On the credit application for that purchase, petitioners represented that their combined monthly income was $13,000.

From December 21, 2001, to November 17, 2003, an IRS agent sent to petitioners, collectively and individually, several letters requesting interviews and scheduling appointments to discuss their 1998, 1999, and 2000 tax years. Petitioners did not meet with the IRS agent during that period. On January 6, 2004, petitioners scheduled a meeting with the IRS agent for January 30, 2004, in Vallejo, California, which location was chosen for petitioners' convenience. The agent traveled approximately 180 miles from Redding, California, to Vallejo for the meeting, but petitioners failed to appear.

On February 4, 2004, the IRS sent to petitioners summonses directing them to appear on March 4, 2004, to be interviewed and to produce documents regarding their 1998, 1999, and 2000 tax years. Petitioners did not appear on March 4, 2004, or produce the requested documents. On May 21, 2004, the IRS provided to petitioners' counsel copies of document requests previously sent to petitioners. Petitioners still failed to provide any of the requested information. On February 11, 2005, petitioners were served with additional summonses requiring their appearance on March 1, 2005. The IRS agent again traveled to Vallejo to meet with petitioners, but petitioners again failed to appear.

In 2002, the IRS began issuing summonses to Redding Bank and to petitioners' paint suppliers in order to obtain information regarding petitioners' tax liability for the years in issue.

From this third-party information, the IRS began to reconstruct petitioners' gross income and expenses.

On May 27, 2005, the IRS mailed to petitioners the statutory notice of deficiency. After the notice of deficiency was sent, petitioners' counsel notified the IRS that the previously requested documents were available for review at his office. Petitioners' counsel also provided copies of the documents to the IRS. Much of the information regarding particular payments made by or to petitioners, however, was gathered from third parties, such as from petitioners' bank, and was not evident from the books and records provided by petitioners. Petitioners themselves never provided any explanation of the documents or how they had calculated their gross income and expenses for the years in issue.

## OPINION

The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. 99, 102 (1999). Respondent has the burden of proving, by clear and convincing evidence, an underpayment for those years in issue and that some part of the underpayment for each of those years was due to fraud. Sec. 7454(a); Rule 142(b).

If respondent establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subjected to a 75-percent penalty, unless the taxpayer establishes that some part of the underpayment is not attributable to fraud. Sec. 6663(b). Respondent must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud will never be presumed. Id.; Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available. Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including the consistent understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986),

affg. T.C. Memo. 1984-601. Dealing in cash is also considered a "badge of fraud" by the courts because it is indicative of a taxpayer's attempt to avoid scrutiny of his finances. See id. at 308.

Respondent's burden regarding the underpayment of tax in support of the fraud penalty has been met. Petitioners have conceded overstatements of expenses and of costs of goods sold and understatements of gross receipts for the years in issue. Those misstatements resulted in substantial understatements of petitioners' tax liability for those years.

The evidence in this case establishes many "badges of fraud". It is undisputed that petitioners substantially understated their income for each of the years in issue. For 2000, petitioners did not file a tax return until June 2002, and then only after receiving a letter from the IRS requesting that a 2000 return be filed. Petitioners' substantial understatements of income for all tax years in issue and their initial failure to file a tax return for 2002 are both indicia of fraud. See id. at 307.

Petitioners failed to cooperate with respondent by not responding to several letters from the IRS requesting interviews and information, not submitting documents requested by the IRS agent conducting the audit, and failing to appear at scheduled interviews. Petitioners did not provide the agent with any

requested documentation until after the notice of deficiency was sent to them. The documentation eventually provided by petitioners was inadequate, leaving the IRS to depend substantially on the records of third parties in the course of its audit of petitioners. Petitioners knew that there was insufficient documentation to support the figures entered on their tax returns, they failed to cooperate with the IRS's multiple requests for interviews, and they presented no plausible explanation, written or oral, regarding their computation of their tax liabilities for the years in issue. Petitioners' refusal to cooperate with respondent in determining their correct tax liability (until this case was being prepared for trial) is a further indication of fraud. Bradford v. Commissioner, supra at 307.

Mrs. Fuller provided Greenfield, who prepared petitioners' tax returns for the years in issue, with totals for gross receipts, costs of goods sold, and other expenses to be used for preparing returns for the tax years in issue, but she did not provide him with any information regarding how the figures she provided were calculated or with substantiating documentation other than some contracts for the purchase of equipment. Petitioners still have not provided to the IRS or to this Court any plausible explanation of how they arrived at the figures reported on their tax returns or how the misstatements occurred.

Petitioners' failure to provide a plausible explanation of their behavior with regard to the calculation of the figures provided to their tax preparer is indicative of fraud.  See id. at 307.

Petitioners represented on several loan applications with various financial institutions during the years in issue that they had vastly larger incomes than they had represented either to Greenfield in the course of his preparation of their returns for those years or to the IRS.  They also provided a copy of a purported 1998 tax return to Redding Bank that showed income four times the amount that was actually reported to the IRS for 1998.  Petitioners argue that the inconsistent information that they provided to financial institutions consisted of "mere estimations of their income" and thus should not be viewed as evidence of fraudulent intent to conceal income from the IRS, to which petitioners reported substantially lower incomes.  However, the large discrepancies in the income that petitioners reported to the IRS and the income reported to the lending institutions, coupled with the 1998 tax return submitted to Redding Bank that was selectively altered to show four times more income to petitioners than the return that was actually filed with the IRS for 1998, are convincing evidence of petitioners' dishonesty and of fraudulent intent to conceal income from the IRS.  Petitioners have not presented any plausible explanation of these discrepancies.

Petitioners attempt to shift the responsibility for the understatements of their tax liabilities to Greenfield and claim that Greenfield should have conducted his own investigation into the accuracy of the information that petitioners provided to him in the course of his preparation of their returns. However, in the course of his preparation of petitioners' tax returns, Greenfield was not provided with documentation to support petitioners' calculations of the figures given to him other than some contracts for the purchase of equipment. Petitioners' reliance on Greenfield to discover the errors in the reported figures is no defense to fraud because they failed to provide Greenfield with complete and accurate information regarding their income and expenses. See Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63; Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172.

Although Greenfield testified that "it was obvious that the [1998] tax return wasn't correct", he was able to reach this conclusion only after petitioners provided him with their books and records after the returns had been filed. The responsibility of filing accurate returns remains principally with the taxpayers, especially where the taxpayers have taken an active and controlling role in the process of preparing the tax returns and the information used for their preparation. See Medlin v.

Commissioner, T.C. Memo. 2003-224, affd. 138 Fed. Appx. 298 (11th Cir. 2005).  Petitioners cannot blame Greenfield for the misstatements and errors in reporting their tax liabilities when petitioners provided Greenfield with the incorrect figures to be entered on their tax returns and when they alone possessed the information that would have indicated discrepancies between petitioners' actual tax liabilities and the amounts reported on their returns.  See Bacon v. Commissioner, T.C. Memo. 2000-257, affd. without published opinion 275 F.3d 33 (3d Cir. 2001).  Furthermore, petitioners' failure to provide to Greenfield the documentation necessary for his accurate preparation of their tax returns is indicative of fraud.  See Medlin v. Commissioner, supra; Ishler v. Commissioner, T.C. Memo. 2002-79.

Respondent has proven by clear and convincing evidence an underpayment of tax due to fraud for each year.  Petitioners have not proven that any part of the underpayments was not attributable to fraud.  See sec. 6663(b).  On consideration of the entire record, we conclude that petitioners are liable for the fraud penalties determined under section 6663(a).

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.